**BEST INVESTMENT COMPANY et al.,**
**Appellants,**

v.

**Foster FRANCIS et al., Appellees.**

**No. 4309.**

Court of Civil Appeals of Texas, Eastland.

March 27, 1970.

Rehearing Denied April 24, 1970.

John R. Bryant, Dallas, for appellants.

F. Ward Steinbach, Dallas, for Foster Francis.

Clarence J. McDonald, Dallas, for Gene Webb.

O. B. Freeman, Crozier, Sweet & Freeman, Bowyer & Thomas, Dallas, for George V. Basham, Jr.

COLLINGS, Justice.

Best Investment Company originally brought suit against Foster Francis in trespass to try title to recover the land here involved, then by amended pleadings joined as plaintiffs David Clark and wife Katie Clark, and joined as defendants George V. Basham, Jr. and Gene Webb. Best sought judgment against Basham for $920.00, the sum alleged to have been converted by Basham to his own use. The Clarks prayed for cancellation of a trustee's deed and a quitclaim deed covering the land in question. In the alternative, plaintiffs sought judgment against Basham, Webb and Francis, jointly and severally, for $10,000.00 actual damages and $20,000.00 exemplary damages.

The defendant Basham, among other pleadings, filed a general denial. He further alleged that the cause of action of Best to recover $920.00 was barred by the two year statute of limitations and that the entire cause of action, if any, of plaintiffs, was barred by the two and four year statute of limitations.

George V. Basham, Gene Webb and Foster Francis filed a joint and separate motion for summary judgment. The basis of the motion was that George V. Basham, Jr., was at all times material, the owner and holder of a note and lien on the land and premises involved; that the note in the sum of $2,950.00 had been signed by the Clarks on June 12, 1952, and had been renewed and extended, by a reinstatement agreement dated April 1, 1962; that the deed of trust securing the note was foreclosed by the substitute trustee on June 3, 1967, and the property was sold to Foster Francis at the foreclosure sale; that Francis purchased the property at the sale by and through his agent Gene Webb; that David Clark and Katie Clark ratified and confirmed the foreclosure sale by negotiations through their relative Ruby Mae Parker to repurchase the same; that Webb was not an agent for George V. Basham, Jr., but in purchasing the property was acting only for the benefit of Foster Francis, and that he made no representations to the Clarks in connection with the property; that Basham and Francis never conferred in any manner in connection with the property and did not act in concert in connection therewith to overreach David Clark and Katie Clark. The defendants in support of their motion for summary judgment referred to affidavits and exhibits attached to their motion. Their motion for summary judgment was granted. Best Investment Company and the Clarks have appealed.

When a defendant moves for summary judgment, the burden is on him to show that except as to the amount of damages, there is no genuine issue as to any material fact and that the defendant is entitled to judgment, as a matter of law. The defendant, as movant, thus has the burden of showing, as a matter of law, that under the pleadings and proof, the plaintiff has no cause of action against him. Rule 166–A(c), Texas Rules of Civil Procedure; McDonald, Texas Civil Practice, Vol. 4, Pocket Part page 40; Gibbs v. General Motors Corporation, Tex., 450 S. W.2d 827.

The undisputed record shows by the pleadings, affidavits and exhibits on file that on June 12, 1952, David Clark and wife Katie Clark purchased Lots 8 and 9, Block A of the unrecorded plat of White Cities Addition to the City of Dallas from Joe A. Irwin. As part of the purchase price the Clarks signed a note dated June 12, 1952 for $2,950.00 payable to Joe A. Irwin at the rate of $40.00 per month including interest at the rate of 8% per annum beginning July 12, 1952 and continuing until the indebtedness was paid. The note was secured by a vendor's lien retained in the deed and by a deed of trust from the Clarks to Thomas C. Hart, trustee providing in the usual form for foreclosure upon default. The deposition of David Clark shows that he and his wife quit making payments on the note in 1955.

Appellee Basham asserts and contends the undisputed record shows that on May 17, 1960 he acquired ownership of the note and deed of trust lien in question by deed from Emery Wiley, trustee in bankruptcy of the estate of Joe A. Irwin, Inc., and the bankrupt estate of Joe A. Irwin. The Wiley deed is not shown in this record, but a renewal and extension agreement dated April 1, 1962 prepared by Basham's attorney and executed by Basham and the Clarks recites the existence of such deed as a basis of his title to the note and deed of trust and asserts it to be of record in Vol. 5356, Pg. 211 of the deed records of Dallas County. The renewal and extension agreement between Basham and the Clarks describes the note, the land, and the deed of trust in question and provides that payments on the note thereby be renewed and extended to become payable to Basham at the rate of $40.00 per month beginning April 5, 1962, including interest, such payments to continue until the note was fully paid, and that the deed of trust lien should also remain in full force and effect. According to the affidavit of Basham there was then due on the note $2,795.08. The Clarks began making payments to Basham on the note and continued such payments until June 5, 1966. Between that time and December 12, 1966, no such payments were made.

The undisputed record also shows that George V. Basham, Jr., on July 7, 1964 executed a deed to Best Investment Company stating that he, Basham, granted and sold to Best "all of the right, title and interest of the Estate of J. A. Irwin, Inc., in and to the properties conveyed to Geo. V. Basham, Jr., by Emery Wiley, Trustee in Bankruptcy of the Estate of J. A. Irwin, Inc. by said instrument of conveyance dated the 17th day of May, 1960 * * *." Appellants by their amended pleadings alleged that Basham, prior to his deed to Best, held the superior title to the tracts of land in question which was security for the unpaid balance of the deferred consideration for the conveyance of the tracts to the Clarks by Irwin, and that said conveyance of Basham to Best conveyed superior title to Best. The record further shows that after the July 7, 1964 conveyance by Basham to Best Basham continued to collect payments on the note from the Clarks without accounting to Best therefor or notifying the Clarks of the conveyance to Best.

On December 7, 1966, Thomas C. Hart resigned as trustee under the deed of trust, and on December 8, 1966, Basham appointed O. B. Freeman, Jr., substitute trustee and directed the substitute trustee to foreclose the deed of trust. After posting of notices there was a foreclosure sale by Freeman on January 3, 1967, and the property was bought in by appellee Gene Webb for appellee Foster Francis for the sum of $1,807.79. After the foreclosure Katie Clark went to Basham's office and attempted to make a payment of $200.00 on the note but Basham informed her that the property had been sold on the previous Tuesday, that is on January 3, 1967.

Soon after the foreclosure sale, and after the Clarks had been informed by Basham that the property had been sold to Gene Webb, David Clark contacted Gene Webb with reference to repurchasing the property, but was informed by Webb that he had purchased the property for Foster Francis and referred Clark to Francis. Clark then requested Webb to confer with Francis and see if he, Clark, could purchase the property from Francis. Francis agreed to sell the property to the Clarks for the amount that he had paid for it plus 10% which amounted to a total of $2,307.-00. A question then arose concerning the making of the conveyance directly to David Clark and his wife because of the fact that Clark had judgments against him which had been abstracted and were of record, and that because of credit problems he, Clark, could not secure a loan. David Clark then contacted Webb and requested him to see if Francis would sell the property to Clark's sister, Ruby Mae Parker. He was informed that Francis would com-

ply with this request and Webb then prepared a contract of sale for execution by Francis and Clark's sister, Ruby Mae Parker, and delivered such contract of sale to Clark who secured the signature of his sister on January 10, 1967. The contract provided that the sale was to be completed within ten days from the date it was signed. The sale was not completed within the ten day period and Webb sent a letter by certified mail to Clark informing him that since the sale was not consummated within the time provided in the contract, the offer was no longer acceptable.

■ After the foreclosure sale and during the time the Clarks were negotiating to repurchase the property Francis requested the Dallas Texas National Title Company to issue a title policy on the property. That company stated that a quitclaim deed from the Clarks to Francis would be required, and prepared such a deed which was delivered to Webb for execution by the Clarks. The deed was signed by the Clarks on January 11, 1967, and acknowledged before Notary Public Jonnie C. Riley on the same date. We cannot agree with appellees' contention that the attempt by the Clarks to repurchase the property, and the signing of the quitclaim deed to Francis during negotiations therefor conclusively show a ratification of the foreclosure.

David Clark admitted in his deposition that some amount was due and unpaid on the note prior to and on the date of foreclosure on January 3, 1967. Clark also admitted that he had no conversation personally with Basham. Mrs. Clark stated that the only conversation she had with Basham was after the foreclosure sale under the deed of trust when he told her that the property had been sold to Gene Webb.

In appellants' first point it is urged that the court erred in granting the motion of the appellees for summary judgment because such motion and the proof in support thereof fails to show there was no genuine issue of fact concerning Basham being the holder of the note and indebtedness involved at any time, and particularly as to being the holder of an indebtedness against the Clarks after July 7, 1964.

■ A copy of the note in question payable to the order of J. A. Irwin is shown in the record, but no endorsement is shown thereon. Basham asserts in his affidavit that Joe A. Irwin delivered the note to him in March of 1962. An affidavit of Joe A. Irwin, attached to appellants' reply to defendants' motion for summary judgment, states that he did not deliver said note to Basham, and that "in all probability George V. Basham, Jr., procured possession, if any, of this note from a stranger thereto." In the deposition of O. B. Freeman it is stated by Freeman that Basham told him the note was in the files of Commercial Title Company. This proof does not show conclusively that Basham was holder of the note by reason of a delivery from Irwin, but presents only an issue of fact on the question.

■ In appellees' brief it is admitted that superior title to the land in question passed to George V. Basham, Jr., by the conveyance from Emery Wiley, trustee in bankruptcy; that this gave Basham the right to collect the unpaid portion of the purchase price of the land involved. Appellants further contend, however, that when Basham conveyed such superior title to Best Investment Company on July 7, 1964, the right of collection of the indebtedness and the lien securing same passed to Best. Appellants refer the court to the deed from Basham to Best Investment Company dated July 7, 1964, (appended to the affidavit of Basham in the defendants' motion for summary judgment) wherein there is no specific description of any property, but reference is made to the deed from Emery Wiley and it is stated that "such deed did provide, among other things, that the interest and estate of J. A. Irwin, Inc., in and to any real property situated in Dallas County, State of Texas, save and except any real property pre-

viously sold, or contemporaneously therewith sold, or thereafter sold in said bankruptcy proceeding, was conveyed to George V. Basham, Jr." Appellants assert that if appellees are correct in their contention that the conveyance from Emery Wiley to Basham conveyed to Basham "all right, title and interest in and to said * * * note", and lien thereon, then the conveyance from Basham to Best, using the same terminology as the purported deed from Wiley to Basham would have the same effect and Best would then have "all right, title and interest in and to said above mentioned note" and lien securing same. It is held that a deed based upon ownership of property by the grantor in a certain county even though it does not describe any land in particular other than such ownership by the grantor, passes title to such property owned by the grantor. Cook v. Smith, 107 Tex. 119, 174 S.W. 1094 (1915); Kagan v. Moody, 309 S.W.2d 515 (Tex.Civ.App. ref. n.r.e. 1957).

■ Appellants also point out that they have pleaded estoppel, ratification and waiver, and particularly urge that because of Basham's conveyance to Best he, Basham is estopped from denying that Best is entitled to the ownership of said indebtedness and interest in the estate of J. A. Irwin. Basham contends that Best cannot take advantage of estoppel because Best was not a party to the reinstatement agreement dated April 1, 1962, and not being a party to such instrument was not in privity of contract or estate with Basham. We cannot agree with this contention. The deed from Basham to Best refers to and is based upon the deed from Wiley to Basham which is interpreted by Basham and the Clarks in the reinstatment agreement as conveying to Basham all right, title and interest in and to the indebtedness and deed of trust lien in question. Basham is bound by such interpretation in his conveyance to Best. Henderson v. Book et al., 128 S.W.2d 117, (Tex.Civ.App. writ ref. 1939). Basham should not be entitled to accept the benefits of the reinstatement

agreement which he claims gave him the right to collect the indebtedness from the Clarks, and then repudiate it so far as Best is concerned. In our opinion appellants' first point contending, in effect, that appellees' motion for summary judgment and proof submitted in support thereof does not conclusively show that Basham was the holder of the note, and the indebtedness and lien securing same at any time after July 7, 1964, is well taken. This holding requires that the judgment be reversed and that the cause be remanded for trial.

■ Appellants further contend, in effect, that the court erred in granting appellees' motion for summary judgment because such motion and the proof failed to show conclusively that all notices of sale were posted, or if posted, that one of such notices was posted "at the courthouse door of Dallas County." This point is well taken. The summary judgment proof does not show that a notice of the sale was posted at the courthouse door of Dallas County but only presents a question of fact concerning such posting. There is a conflict between the statement in the affidavit of Freeman in which he asserts that he posted a notice of the sale at the courthouse door, and the affidavit of Gene McDaniel and the attachment affixed thereto which indicates that no notice was posted at the courthouse door. This conflict and the proof raises an issue of fact which precludes the granting of a summary judgment. Hart v. Eason, 159 Tex. 375, 321 S.W.2d 574 (1959).

We likewise cannot agree with appellees' contention that the attempt of the Clarks to repurchase the property, and their signing of the quitclaim deed to Francis during negotiations to repurchase the land conclusively show a ratification by the Clarks of the foreclosure sale.

In any event, regardless of the question of a proper posting of notice, the question of ratification by Clarks of the foreclosure sale, or of the right of the Clarks to set aside the sale for any reason, the judgment

should be reversed because the summary judgment proof does not conclusively show that Basham was the holder of the note and owner of the indebtedness and the lien securing same at the time of the foreclosure sale.

The summary judgment is reversed and the cause is remanded for trial.